DONALD L. STAPLES,                         Civil No. 09-987 (DSD/JSM)

       Petitioner,

v.                                      **REPORT AND RECOMMENDATION**

JOHN KING,

       Respondent.

> Donald L. Staples, Minnesota Correctional Facility - Rush City, 7600 525th Street, Rush City, Minnesota, 55069, Petitioner, pro se.
>
> Tara C. Ferguson Lopez, Assistant Mille Lacs County Attorney, 525 2nd Street S.E., Milaca, Minnesota, Minnesota, 56353, for Respondent.

JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Donald L. Staples for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response, (Docket No. 9), contending that the petition should be dismissed. The case has been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

In March 2006, a state court jury in Mille Lacs County, Minnesota, found petitioner guilty of second degree assault in violation of Minn.Stat. § 609.222, subd. 2, and third degree assault in violation of Minn.Stat. § 609.223, subd. 1. Petitioner was given a 39-month sentence for his crimes.

Both of petitioner's convictions resulted from a single incident, which allegedly occurred outside of the Mille Lacs Casino on March 29, 2005. The convictions rested primarily on the testimony of two trial witnesses – an eyewitness named James Pierzinski ("Pierzinski"), and a police officer named Anthony Erholtz ("Erholtz").

Pierzinski testified that he was doing some remodeling work at the Mille Lacs Casino Hotel on March 29, 2005. (Trial transcript, [hereafter "T"], at 3-4.[1]) Around noon that day, Pierzinski went outside to eat lunch. (T. 4.) While he was eating, he saw a vehicle pull up nearby. (T. 4-5.) He saw petitioner get out of the vehicle and walk up to another man who was standing by a parked truck. The two men began to argue and fight, and punches were thrown. (T. 4-6.) The man who had been standing by the truck suddenly shouted, and then he and someone else got into the truck and drove away. (T. 8.)

On cross-examination, Pierzinski said that he was about 40 yards away from petitioner when he got out of his vehicle and approached the other man, but he acknowledged that he might have previously told a police officer that he was 50 yards away. (T. 9-10.) Although there were some cars in the area, Pierzinski saw petitioner get punched by the other man, and he saw that petitioner's eye was cut during the altercation. (T. 10.) Pierzinski also testified that he never saw a knife in petitioner's hand, and he never heard petitioner threaten to kill the other man. (T. 10.)

Officer Erholtz testified that he was on duty on March 29, 2005, and he was summoned to a medical clinic shortly after noon that day. When he arrived there, he found a man named Ronald Davis ("Davis"), who had been injured. Erholtz took photographs of

---

[1]     Apposite sections of the trial transcript are included in Respondent's Answer. (Docket No. 9, pp. 19-78.)

Davis, which evidently depicted a cut on Davis's left chest. (T. 24.) Erholtz described the cut as a "fairly serious wound," which was "approximately six inches long and approximately two inches wide." (T. 24.)

Erholtz, assisted by another officer named Niemeyer, also obtained pictures of some of the clothing that Davis was wearing while he was at the clinic. (T. 18-19.) Those pictures were admitted into evidence, (T. 20), and presumably were viewed by the jury. The Minnesota Court of Appeals later explained that the pictures depicted Davis's "blood-stained shirts with holes coinciding with his chest wound." State v. Staples, No. A06-2298 (Minn.App. 2008), 2008 WL 763128, rev. denied, June 18, 2008.

Erholtz interviewed Davis at the clinic and learned that an "incident" had occurred at the Mille Lacs Casino, and that the "alleged suspect was supposedly at the Casino." (T. 20.) Based on the interview with Davis, Erholtz began to look for petitioner. (T. 30.)

Erholtz returned to the Casino, where he located and photographed some patches of a red substance on the pavement. (T. 20-23.) Erholtz believed the substance was blood. (T. 28.) However, he did not collect any samples of the substance, he did not try to determine whether the substance actually was blood, and he did not try to discover how the substance got on the pavement. (T. 28-29.)

Erholtz also interviewed several individuals who were believed to have knowledge of the incident that took place at the Casino. (T. 26.) Based on those interviews, Erholtz "learned that some type of knife was allegedly used in this incident." (T. 27.) However, no knife was ever found. (T. 27.)

After Erholtz completed his investigation of the incident that occurred outside of the Casino, petitioner was charged with two counts of assault for allegedly stabbing Davis. A jury later found petitioner guilty of assaulting Davis.

Petitioner challenged his conviction by filing a direct appeal that presented two grounds for relief. First, petitioner argued that there was insufficient evidence to support his conviction. <u>Staples</u>, 2008 WL 763128, at *1. Second, petitioner argued that the jury had not been properly instructed on the meaning of the terms "assault" and "intent." <u>Id.</u>

The briefing in petitioner's direct appeal gave rise to a new issue that has been raised in the current habeas corpus petition. This issue stems from the manner in which some of Pierzinski's trial testimony was presented in the State's Brief to the Minnesota Court of Appeals. The testimony at issue was given during the course of the prosecution's redirect examination of Pierzinski. During cross-examination by defense counsel that immediately preceded the redirect examination at issue, Pierzinski had testified that he never saw a knife in petitioner's hand, he saw Davis punching petitioner, he saw that petitioner "had a cut eye," and he never heard petitioner threaten to kill anyone. (T. 10-11.) The prosecutor's subsequent redirect examination of Pierzinski produced the following testimony:

> Q. You were asked some questions about some actions by Ronald Davis. Did you see Mr. Staples [i.e., Petitioner] swing at Mr. Davis?
>
> A. There was a lotta action going on. You know, I didn't really pay attention that close, you know, who was hittin' who. I – you know, I seen the other guy hit him and all of a sudden he's bleedin', you know, and ...
>
> Q. And how – do you recall seeing Mr. Staples make some motions towards Mr. Davis?
>
> A. Did I see?
>
> Q. Correct.
>
> A.  I – yes.

(T. 11.)

The State referred to this ambiguous testimony twice in its brief to the Minnesota Court of Appeals.  On both occasions, the State suggested that this testimony should be interpreted to mean that petitioner hit Davis, and that Davis was suddenly bleeding. (Respondent's Brief on Direct Appeal, pp. 4, 8-9.[2])  In petitioner's Reply Brief on direct appeal, he argued that the State had misinterpreted Pierzinski's testimony, and had taken the testimony out of context.  According to petitioner, what Pierzinski actually meant was that Davis hit petitioner, and it was petitioner (not Davis) who suddenly was bleeding. (Appellant's Reply Brief, pp. 1-3.[3])

With the benefit of both parties' briefing, the Minnesota Court of Appeals evidently accepted the State's interpretation of Pierzinski's ambiguous testimony.  The Court of Appeals summarized Pierzinski's testimony as follows:[4]

> At trial, James Pierzinski testified that on March 29, 2005, he was in the parking lot of the Mille Lacs Grand Casino hotel taking his lunch break with his work crew from their job of remodeling the interior of the hotel when he observed a vehicle stop at a point approximately 40 yards away.  A man, recognized and identified by Pierzinski as appellant, got out of the vehicle and began arguing with Pierzinski's foreman's brother, R.D.  Pierzinski testified that the two men began to throw punches at each other and then he heard R.D. shout out. Pierzinski recounted that '[t]here was a lotta action going on.... I seen [appellant] hit [R.D.] and all of a sudden [R.D.'s] bleedin'.'  Although Pierzinski stated that he did not actually see a weapon, and that there were a few cars in the parking lot, he testified that he had an unobstructed view of the fight.

Staples, 2008 WL 763128, at *1 (emphasis added).

---

[2]     Attachment to Respondent's Answer, (Docket No. 9, pp. 103-118).

[3]     Attachment to Respondent's Answer, (Docket No. 9, pp. 129-35).

[4]     The Court of Appeals identified petitioner as "appellant" and Ronald Davis as "R.D."

Based (at least in part) on this understanding of Pierzinski's testimony, the Minnesota Court of Appeals found that there was sufficient evidence to support petitioner's conviction. The Court of Appeals also rejected petitioner's second argument based on the jury instructions. Therefore, petitioner's conviction was affirmed on direct appeal. The Minnesota Supreme Court denied petitioner's application for further review, and petitioner thereafter filed his current habeas corpus petition.

The current petition lists three grounds for relief. The first two claims are the same claims that were presented in petitioner's initial brief to the Minnesota Court of Appeals: (1) there was insufficient evidence to support the jury's verdict, and (2) the jury was not properly instructed on the meaning of "assault" and "intent." Petitioner's third habeas claim repeats the argument that he raised in his Reply Brief on direct appeal, i.e., that the State misrepresented Pierzinski's testimony about who hit who, and who was bleeding.

Respondent acknowledges that petitioner has exhausted his state court remedies for all three of his habeas corpus claims, and respondent contends that all three claims should be denied on the merits here. The Court agrees.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern this Court's review of petitioner's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that:

>        a state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

<u>Id</u>. at 405.

>        Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id</u>. at 413.

The Court also explained that:

>        A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

<u>Id</u>. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). See also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific federal constitutional error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

III. **DISCUSSION**

A. **Sufficiency of the Evidence (Ground One)**

Petitioner initially contends that he was deprived of his federal constitutional right to due process, because "[t]he evidence presented at trial was insufficient as a matter of law to sustain the conviction for Second and Third degree assault." (Petition, [Docket No. 1],

p. 4.)  Petitioner argues that the evidence was insufficient because (i) the State did not produce any testimony from the alleged victim, (ii) the State relied on the testimony of just a single eyewitness – Pierzinski, (iii) Pierzinski's testimony was not reliable, as he was not paying much attention to the alleged offense, and he did not have a good view of the alleged offense, and (iv) Pierzinski admitted that he never saw petitioner with a knife.  (Id., p. 5.)  Petitioner further argues that Officer Erholtz's testimony provided little, if any, inculpatory evidence, because Erholtz admitted that he never found any knife that could have been used to commit the alleged offense, and he could not verify that the substance he saw on the pavement at the Casino actually was blood.  (Id., p. 7.)

When a state prisoner raises an "insufficiency of the evidence" claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original).  "This standard recognizes that it is the province of the fact-finder, not this [reviewing] court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Sera v. Norris, 400 F.3d 538, 543 (8th Cir.), cert. denied, 546 U.S. 915 (2005), quoting Jackson, 443 U.S. at 319.  Petitioner has not suggested that the Minnesota Court of Appeals misstated or misunderstood the applicable standard of review for his insufficiency of the evidence claim in any way.[5]

---

[5]     The State Court described the standard of review for petitioner's insufficiency of the evidence claim as follows:

> In considering a claim of insufficient evidence, this court[']s review is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in a light most

After setting forth the applicable standard of review, the Minnesota Court of Appeals explained why the record in this case includes sufficient evidence to support petitioner's conviction for second and third degree assault. The Court of Appeals quoted the statutes that petitioner was charged with violating,[6] and then carefully reviewed the evidence presented in support of those charges. The state court concluded that "the record of circumstantial evidence, coupled with the direct evidence provided by Pierzinski, was sufficient to sustain appellant[']s convictions." <u>Staples</u>, 2008 WL 763128 at *3.

---

favorable to the conviction, [is] sufficient to permit the jurors to reach the verdict which they did." <u>State v. Webb</u>, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's witnesses and disbelieved any contrary evidence. <u>State v. Moore</u>, 438 N.W.2d 101, 108 (Minn.1989). We "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. <u>State v. Alton</u>, 432 N.W.2d 754, 756 (Minn.1988)....

Inconsistencies in the state's case or possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable." <u>State v. Ostrem</u>, 535 N.W.2d 916, 923 (Minn.1995).

<u>Staples</u>, 2008 WL 763128 at *1-2.

[6] The Court of Appeals explained that

"Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm" commits assault in the second degree. Minn.Stat. § 609.222, subd. 2 (2004). "Whoever assaults another and inflicts substantial bodily harm" commits assault in the third degree. Minn.Stat. § 609.223, subd. 1 (2004)."

<u>Staples</u>, 2008 WL 763128 at *2.

This Court's post-conviction review of petitioner's insufficiency of the evidence claim is "extremely limited." Whitehead v. Domire, 340 F.3d 532, 536 (8th Cir. 2003). The Supreme Court's decision in Jackson requires this Court to "[v]iew[ ] the evidence in the light most favorable to the prosecution and resolv[e] all conflicting inferences in the state's favor." Id. at 537. In addition, AEDPA requires this Court to "presume that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence." Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005), citing 28 U.S.C. § 2254(e)(1).

Based on this Court's review of the evidence presented at petitioner's trial, it cannot conclude that petitioner has satisfied the very difficult burden imposed by Jackson and AEDPA. A rational jury could have determined that petitioner was guilty of committing a second and third degree assault against Davis. The jury was given evidence showing:

- Petitioner approached Davis outside of the Mille Lacs Casino;[7]

- two men soon were engaged in a physical fight, and both were throwing punches at each other;

---

[7]    As far as this Court can tell, Pierzinski did not explicitly identify the man with whom petitioner was fighting. However, looking at the record as a whole, it is clear that petitioner must have been fighting with Ronald Davis. Indeed, petitioner himself acknowledged as much in his brief to the Minnesota Court of Appeals. The petitioner has stated that:

> Mr. Pierzinski observed a vehicle drive up to a point approximately 40 to 50 yards from his location (T. 4-5, 10). A man got out of the vehicle and approached another man, and an argument ensued, with both men yelling (T. 5, 7). One of the men was Donald Staples, the appellant in this case; the other was Mr. Pierzinski's foreman's brother, Ronald Davis, (T. 10).

Appellant's Brief, p. 5. (This brief is attached to Respondent's Answer, [Docket No. 9, pp. 82-102].)

- the fight ended suddenly, and Davis promptly left the Casino and went to a clinic;

- when Davis arrived at the clinic he had a two-inch by six-inch cut on his chest;

- Davis's clothing was cut in a manner that coincided with his injury; and

- there was blood on Davis' clothing.

Given this evidence, it was not irrational for the jury to conclude that petitioner assaulted Davis and inflicted substantial bodily harm, thereby committing a third degree assault; and that petitioner assaulted Davis with a dangerous weapon and inflicted substantial bodily harm, thereby committing a second degree assault. (See n. 6, supra.)

Petitioner contends that the prosecution's evidence was inadequate, because only one eye-witness testified, the alleged victim did not testify, the lone eye-witness was not paying close attention to the alleged offense, no weapon was ever seen or found, and the red substance found near alleged crime scene was not proven to be the victim's blood. Those factors undoubtedly weakened the prosecution's case, but a criminal conviction is not unconstitutional simply because the quality or quantity of incriminating evidence could have been greater. Indeed, any criminal defendant could easily hypothesize about additional evidence that would make his guilt more obvious. Such hypothesizing, however, has no bearing on the sufficiency of the evidence actually presented at trial.

Again, when presented with an insufficiency of the evidence claim, courts must look at the evidence "in the light most favorable to the prosecution," and determine whether "any rationale trier of fact" could have found the defendant guilty based on that evidence. Jackson, 443 U.S. at 319. Applying that standard to petitioner's case, the Minnesota Court of Appeals concluded that "the record of circumstantial evidence, coupled with the direct evidence provided by Pierzinski, was sufficient to sustain [petitioner's] convictions."

Staples, 2008 WL 763128, at *3.  Petitioner has not shown that the State Court's resolution of his insufficiency of the evidence claim should be overturned by a federal writ of habeas corpus.

**B.    Jury Instruction Claim (Ground Two)**

Petitioner further argues that his conviction should be set aside because the trial court did not give adequate jury instructions about the elements of the charged offenses. Petitioner does not suggest that the jury instructions failed to adequately underline identify the elements of the charged offenses, but he contends that the instructions failed to adequately define two of those elements.   More specifically, petitioner contends that the jury instructions were deficient because they did not include definitions of the terms "assault," and "intent."

Petitioner did not ask the trial court judge to give the jury instructions on the meaning of "assault" and "intent."  Therefore, petitioner waived the right to contest the omission of such instructions on direct appeal.  Despite petitioner's waiver, the Minnesota Court of Appeals ruled that his jury instruction issue could be reviewed for "plain error."  Staples, 2008 WL 763128 at *3.  The Court of Appeals explained that, under Minnesota procedural law, "[f]or an appellate court to grant relief for 'an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights.'" Id., quoting State v. Griller, 583 N.W.2d 736, 740 (Minn. 1998).

The Court of Appeals determined that (a) the trial court did err by not instructing the jury on the meaning of "assault" and "intent," and (b) that omission was "plain error." Staples, 2008 WL 763128 at *4-5.  However, the appellate court ultimately determined that the trial court's error did not require a reversal of petitioner's conviction, because the error did not affect petitioner's "substantial rights."  Id. at *5.  It reached this conclusion because

petitioner's defense did not hinge on the legal definition of "assault" or "intent." Petitioner's intent to cause bodily harm to Davis was not the issue in this case. Instead, petitioner argued that there was insufficient evidence that he actually did cause any bodily harm to Davis. Stated otherwise, the defense did not try to show that while petitioner may have harmed Davis, he had no intent to do so; but rather the defense tried to convince the jury that there was no proof that petitioner actually harmed Davis at all. Indeed, petitioner continues to argue, even in his current petition, that "there was no supporting or factual evidence presented at trial that would prove beyond a reasonable doubt that [petitioner] possessed a sharp instrument or had inflicted substantial bodily harm, intentionally or otherwise." (Petition, [Docket No. 1], pp. 12-13 (emphasis in original)). The phrase "intentionally or otherwise" shows that intent has never been an issue in this case. In sum, according to petitioner, the issue presented to the jury was not whether petitioner intended to cause bodily harm to Davis, but whether petitioner actually did cause any harm to Davis at all.

As explained by the Minnesota Court of Appeals, petitioner's "defense at trial was that he did not inflict the victim[']s injury and, although there may have been a confrontation between himself and [Davis], that there was no evidence that [petitioner] assaulted [Davis] with a sharp object," and thus petitioner's "asserted defense did not implicate the element of intent." Staples, 2008 WL 763128 at *5 (emphasis in the original). The Court of Appeals also pointed out that –

> [T]here was considerable evidence from which the jury could readily have inferred intent. According to the evidence, [Petitioner] drove to the scene and confronted [Davis], an altercation ensued, and [Davis] sustained a gaping wound on his chest. Although the weapon was not recovered, the jury

> could reasonably have inferred from the evidence that
> [Petitioner] employed a knife or other sharp cutting implement
> and intended to inflict bodily harm on [Davis].

Id.  The Court of Appeals therefore concluded that "on this record,... the district court['s]

failure to define 'assault' and 'intent' in the jury instructions, although plain error, did not

affect appellants substantial rights."  Id.

State prisoners are rarely granted federal habeas corpus relief based on instructional

errors, because "[t]he formulation of jury instructions primarily concerns the application and

interpretation of state law," Louisell v. Director of Iowa Department of Corrections, 178 F.3d

1019, 1022 (8th Cir. 1999), and "[f]ederal habeas courts... do not grant relief, as might a

state appellate court, simply because the instruction[s] may have been deficient" under

state law.  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  Before a federal court "may

overturn a state conviction, the validity of which is questioned on account of a deficient

instruction, 'it must be established not merely that the instruction is undesirable, erroneous,

or even 'universally condemned,' but that it violated some right which was guaranteed to

the defendant by the Fourteenth Amendment.'" Beets v. Iowa Dept. of Corrections, 164

F.3d 1131, 1134 (8th Cir.), cert. denied, 528 U.S. 825 (1999), quoting Cupp v. Naughton,

414 U.S. 141, 146 (1973).  Habeas petitioners "must carry a 'heavy burden' to establish

that allegedly erroneous jury instructions rise 'to the level of constitutional significance.'"

Conner v. Director of Division of Adult Corrections, 870 F.2d 1384, 1388 (8th Cir.), cert.

denied, 493 U.S. 953 (1989), quoting Williams v. Lockhart, 736 F.2d 1264, 1267 (8th Cir.

1984).  The Court must also be mindful of the burden imposed by AEDPA, which requires

petitioner to demonstrate that the State Court's resolution of his jury instruction claim "was

contrary to, or involved an unreasonable application of," applicable Supreme Court

precedent.  28 U.S.C. § 2254(d)(1).

Here, the Court finds that the U.S. Supreme Court precedent that is most directly applicable to petitioner's jury instruction claim is <u>Henderson v. Kibbe</u>, 431 U.S. 145 (1977). <u>Henderson</u> was a habeas case that came before the Supreme Court based on an alleged jury instruction error. In that case, as in this one, the defendant did not raise the alleged instructional error in the trial court, but rather, the issue was raised for the first time on direct appeal. That prompted the Supreme Court to observe that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." <u>Id</u>. at 154. Furthermore, the error in <u>Henderson</u>, as here, did not involve the outright omission of an element of the charged offense, but, as in the present case, it involved a failure to <u>define</u> one of the elements of the offense. As explained by the Supreme Court:

> [Petitioner's] burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation beyond the reading of the statutory language itself of the causation element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.

<u>Id</u>. at 155.

In <u>Henderson</u>, the Court reiterated two principal guidelines for reviewing jury instruction claims raised in habeas corpus cases, which were previously set forth in <u>Cupp Naughton, supra</u>. First, the Court pointed out that "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" <u>Id</u>., quoting <u>Cupp</u>, 414 U.S. at 147. <u>See also</u> <u>Berrisford v. Wood</u>, 826 F.2d 747, 752 (8th Cir. 1987) ("[f]ederal habeas corpus relief from a state court conviction is not available because of improper jury instructions unless the error constitutes a fundamental defect that resulted in a complete miscarriage of justice or

so infected the entire trial as to deprive the defendant of a fair trial"), cert. denied, 484 U.S. 1016 (1988).  Second, in accordance with Cupp, the Court indicated that in cases involving an omitted jury instruction, there must be "[a] fair evaluation of the omission in the context of the entire record."  Henderson, 431 U.S. at 152.  See also Estelle v. McGuire, 502 U.S. at 72 (to determine whether a particular instruction is so egregious that it has effectively destroyed a petitioner's right to a fair trial, "the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record"), quoting Cupp, 414 U.S. at 147.[8]

The Minnesota Court of Appeals' analysis of petitioner's jury instruction claim is fully consistent with the teachings of Henderson and Cupp.  The appellate court examined the instructional issue in the context of the entire trial record, and concluded that the omitted instructions did not affect petitioner's "substantial rights."  The appellate court explained that, in this particular case, the omitted instructions were not critical, because the outcome of this case did not hinge on the meaning of "assault" and "intent."  As previously noted, Petitioner has never contended that Davis did not sustain "bodily harm."  Nor has petitioner

---

[8]      In Cupp itself, the Court explained:

> [A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.... While this does not mean that an instruction by itself may never rise to the level of constitutional error,... it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge.  Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

414 U.S. at 146-47 (citations omitted).

17

contended that he may have caused Davis bodily harm, but not with "intent."  Rather, petitioner has consistently argued that there was not sufficient evidence to prove that he actually caused Davis any bodily harm at all.  Therefore, the State Court reasonably concluded that the absence of specific instructions on the meaning of "assault" and "intent" did not fatally prejudice the jury's assessment of petitioner's guilt or innocence.

In conclusion, this Court can find no flaw in the Minnesota Court of Appeal's analysis of petitioner's jury instruction claim that would warrant habeas corpus relief.  Petitioner has not shown that the appellate court's analysis of his jury instruction claim was contrary to, or an unreasonable application of Henderson or Cupp, or any other Supreme Court decision.  Thus, the Court concludes that petitioner's second habeas corpus claim must be denied on the merits.

## C.    Prosecutorial Deceit Claim (Ground Three)

The third ground for relief presented in petitioner's habeas corpus petition appears to be a novel claim of prosecutorial misconduct.  Petitioner contends that his conviction should be vacated, because the prosecutor misrepresented the evidence in the record – not to the jury, but to the Minnesota Court of Appeals.  According to petitioner, the State "clearly misrepresented the record and the facts in an intentional and deliberate attempt to deceive the Court of Appeals," thereby depriving petitioner of his "guaranteed Constitutional Due Process Right to appellate review" of his conviction.  (Petition, [Docket No. 1], p. 14.)

Petitioner has not identified any legal authority which suggests that a federal court can vacate a state prisoner's conviction based on a prosecutor's mischaracterization (or mischaracterization) of the evidence in a state court appellate brief.  However, even if such legal authority did exist, petitioner's current habeas corpus claim still would be summarily dismissed, because it lacks any factual foundation.  Simply put, the State's brief to the

Court of Appeals did not misrepresent the evidence in the record, and in any event, the appellate court was perfectly capable of engaging in its own review and analysis of the testimony presented at trial.

The evidence at issue consists of one statement by the lone eyewitness who testified at trial – Pierzinski.  During a redirect examination of Pierzinski, the prosecutor asked him whether he saw the petitioner, (Donald Staples), "swing at" the victim, (Ronald Davis).  In response to that question, Pierzinski gave the following ambiguous response:

> There was a lotta action going on.  You know, I didn't really pay attention that close, you know, who was hittin' who.  I – you know, I seen the other guy hit him and all of a sudden he's bleedin', you know, and. . . .

(T. 11.[9])

It is true that it is impossible to know for sure who Pierzinski was referring to in the last part of this statement.  Did he mean that Davis hit petitioner, and "all of a sudden" petitioner was bleeding?  Or did he mean that petitioner hit Davis, and "all of a sudden" Davis was bleeding?  Looking at Pierzinski's statement in the context of his entire testimony does not provide a definitive answer.  It is certainly arguable that Pierzinski was referring to Davis as the hitter, and petitioner as the bleeder.  But it is also arguable that Pierzinski meant that petitioner was the hitter, and Davis was the bleeder.

The State obviously believes that Pierzinski was identifying petitioner as the hitter, and Davis as the bleeder.  However, the State exercised special care in the presentation of this evidence to the Minnesota Court of Appeals.  The State did not baldly assert that Pierzinski had identified petitioner as the hitter, and Davis as the bleeder.  Rather, the State merely argued that the testimony could be (and should be) interpreted that way.

---

[9]     This segment of Pierzinski's testimony is reported more fully at pp. 4-5 , supra.

Petitioner has identified two specific instances when the State referred to the testimony at issue. First, the State's Brief stated: "When asked if he saw the appellant swing at Ronald Davis[,] Pierzinski said, 'I seen the other guy hit him and all of a sudden he's bleedin'.'" (Respondent's Brief, p. 4.[10]) This is not a "misconstruction of the facts and the trial testimony," as petitioner alleges, (Petition, [Docket No. 1], p. 15); it is a direct and accurate quote of Pierzinski's testimony. Later, the State's Brief repeated the same statement, (i.e., "When asked if he saw the appellant swing at Ronald Davis[,] Pierzinski said, 'I seen the other guy hit him and all of a sudden he's bleedin''"), and followed this statement with the following argument:

> When that statement is viewed in a light most favorable to upholding the conviction, See Webb, 440 N.W.2d at 430, this witnesses [sic] answer can be read as, 'I seen the defendant hit Ronald Davis and all of a sudden he's bleedin'.'"

(Respondent's Brief, pp. 8-9, (emphasis added)).[11]) It bears repeating that the State did not misquote the record; the State accurately quoted Pierzinski's testimony, and simply presented an argument about how this ambiguous section of the testimony should be interpreted.

Petitioner obviously disagrees with the State's interpretation of Pierzinski's testimony, and he had an opportunity to tell the Minnesota Court of Appeals what he thought Pierzinski actually meant. Indeed, petitioner's Reply Brief to the State Court of Appeals included a three-page argument on this subject, which explained in great detail why the Court of Appeals should reject the State's interpretation of Pierzinski's testimony, (i.e., that petitioner was the hitter, and Davis was the bleeder), and accept his own

---

[10]    Attachment to Respondent's Answer, (Docket No. 9, pp. 103-118).

[11]    Attachment to Respondent's Answer, (Docket No. 9, pp. 103-118).

interpretation of that testimony, (i.e., that Davis was the hitter, and petitioner was the bleeder).  (See n. 3, and accompanying text, supra.)  The Court of Appeals ultimately agreed with the State's interpretation of the testimony at issue, (see Staples, 2008 WL 763128, at *1), but that determination cannot be attributed to any deceit or "prosecutorial misconduct" perpetrated in the State's Brief to the Court of Appeals.

Again, the fundamental premise of petitioner's third claim for relief is simply not sustainable.  Petitioner contends that the State deliberately misled the Minnesota Court of Appeals, by misrepresenting the evidence produced at his trial.  But that just is not true. The State accurately presented the testimony at issue, and argued that the testimony should be interpreted in a certain manner.  That argument does not constitute "prosecutorial misconduct," and it does not violate the Fourteenth Amendment's due process clause.  Therefore, the third ground for relief listed in petitioner's habeas corpus petition must be denied on the merits.

## IV.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide petitioner's claims any differently than they have been decided here.  Petitioner has not identified, (and the Court cannot independently

discern), anything novel, noteworthy or worrisome about this case that warrants appellate review. It is therefore recommended that petitioner should <u>not</u> be granted a COA in this matter.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated:     September 14, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by September 28, 2010, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.